UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                         )
LEASE CRUTCHER LEWIS WA, LLC,            )
                                         )    Case No. C08-1862RSL
                    Plaintiff,           )
                                         )
        v.                               )
                                         )    ORDER GRANTING IN PART
NATIONAL UNION FIRE INSURANCE            )    AIG DOMESTIC CLAIMS, INC.'S
COMPANY OF PITTSBURGH, PA, *et al.*,     )    MOTION TO DISMISS
                                         )
                    Defendants.          )
_____)

     This matter comes before the Court on "AIG Domestic Claims, Inc.'s Motion for Rule 12 Dismissal." Dkt. # 18. Defendant seeks dismissal of all of plaintiff's claims on the ground that AIG Domestic Claims, Inc., owed no duty to plaintiff and/or cannot be liable under the claims asserted. Having reviewed the memoranda and exhibit submitted by the parties and having heard the arguments of counsel, the Court finds as follows:

## BACKGROUND

     Plaintiff Lease Crutcher Lewis WA, LLC (hereinafter, "Lease Crutcher") was the general contractor on a construction project in Bellevue, Washington, known as the Tower 333 project. On November 16, 2006, a tower crane at the site collapsed, causing significant damage to adjacent sites and killing a tenant in one of the neighboring buildings. When Lease Crutcher was sued in King County Superior Court, it tendered the defense of the litigation to its insurer, defendant National Union Fire Insurance Company of Pittsburgh, PA. National Union accepted

the tender and assigned the claim to a sister company, AIG Domestic Claims, LLC, for handling.

Plaintiff claims that AIG Domestic Claims, acting on behalf of and with the authority of National Union, implemented a claim settlement strategy that allowed National Union to recover from a third party amounts paid under the insurance policy before its insured was made whole. Plaintiff alleges that this conduct (1) constitutes bad faith and a breach of defendants' fiduciary duties to Lease Crutcher; (2) violated the Insurance Fair Conduct Act; (3) breached the insurance contract; (4) violated the Consumer Protection Act; and (5) converted funds that rightly belonged to Lease Crutcher. Plaintiff also seeks a declaration that Lease Crutcher has a right to be made whole that is superior to any right National Union might have to recover funds from other liable parties or insurers. AIG Domestic Claims seeks dismissal of all of plaintiff's claims against it pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c).

## DISCUSSION

### A. Liability of Insurance Adjusters – General

The theory underlying AIG Domestic Claims' motion to dismiss is that an independent adjuster, hired by an insurance company to handle a claim, owes no duty and has no personal liability to an insured for actions taken on behalf of the insurer. Defendant has not presented, and the Court has not found, any authority for this broad proposition. Under Washington law, employees and agents are regularly held liable for their individual participation in wrongful conduct, even if that conduct were performed for the benefit of its principal and could impose liability on the principal as well. Dodson v. Econ. Equip. Co., Inc., 188 Wn. 340, 343 (1936) ("The liability of an officer of a corporation for his own tort committed within the scope of his official duties is the same as the liability for tort of any other agent or servant. That the agent acts for his principal neither adds to nor subtracts from his liability."); Deep Water Brewing, LLC v. Fairview Resources Ltd., ___ Wn. App. ___, 215 P.3d 990, 1009-1012 (2009) (holding president of homeowner's association personally liable, along with association itself,

for bad faith violations of restrictive covenants in which he participated). No distinct body of legal principles governs the liability of adjusters to insureds for their acts or omissions while handling a claim: the Court will therefore evaluate each theory of liability and the law pertaining thereto before determining whether plaintiff has stated a viable cause of action against AIG Domestic Claims. Thomas R. Malia, Annotation, <u>Liability of Independent or Public Insurance Adjuster to Insured for Conduct in Adjusting Claim</u>, 50 A.L.R.4th 900 (1986).

**B. Bad Faith and Breach of Fiduciary Duty Claim**

Lease Crutcher alleges that AIG Domestic Claims had an obligation to act in good faith toward plaintiff and/or a fiduciary duty that required it to protect plaintiff's financial interests even at the expense of its own monetary concerns. Plaintiff further alleges that AIG Domestic Claims breached these duties when it conditioned settlement of the claims against Lease Crutcher on a third party's payment of available insurance funds to National Union. AIG Domestic Claims argues that only the insurer, not its agent or adjuster, owes a duty of good faith toward, or has a fiduciary relationship with, the insured.

In order to prevail on a bad faith claim, the insured must prove a duty, breach of that duty, and damages arising from the breach. <u>Smith v. Safeco Ins. Co.</u>, 150 Wn.2d 478, 485 (2003). Plaintiff argues that the laws of Washington and the common law impose a duty of good faith on third-parties hired by an insurer to perform basic insurance functions. Plaintiff's statutory argument is well-taken. The insurance code of Washington applies to "all insurance transactions . . . and all persons having to do therewith . . . ." RCW 48.10.020. "Persons" is defined to include corporations such as AIG Domestic Claims. RCW 48.01.070. More importantly, the legislature has expressly imposed an obligation of good faith on those who represent insurers and insureds. RCW 48.01.030 states:

> The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, their providers, and their representatives rests the duty of preserving inviolate the integrity of

ORDER GRANTING IN PART AIG DOMESTIC
CLAIMS, INC.'S MOTION TO DISMISS     -3-

insurance.

Lease Crutcher alleges that AIG Domestic Claims acted on behalf of and with authority from National Union in its dealings with the insured. National Union delegated one of the basic functions of an insurer – claims handling and adjustment – to a separate but related corporate entity. AIG Domestic Claims acted as National Union's representative and played a significant role in the insurance transaction which gave rise to this litigation. The statutory duty of good faith set forth in RCW 48.01.030 is easily broad enough to encompass AIG Domestic Claims' conduct in these circumstances.

Defendant argues that "RCW 48.01.030 cannot be read in isolation" and, relying on the Washington Administrative Code and Rice v. State Farm Mut. Auto. Ins. Co., 2005 WL 2487975 (W.D. Wash., Oct. 7, 2005), maintains that "[n]othing in [the statutory] language imposes liability on an agent of an insurance company. . . ." Motion at 5-6. Although courts regularly consider administrative rules when resolving ambiguities in a statute, they "should not defer to an agency's interpretation of a statute if that interpretation conflicts with the statutory mandate." Bostain v. Food Exp., Inc., 159 Wn.2d 700, 727 (2007). In this case, the statute is unambiguous: both the insurer and its representative must act in good faith toward the insured. If the regulations stated otherwise, the administrative agency would have exceeded its power by promulgating rules that amend or change the legislative enactment. Wash. Pub. Ports Ass'n v. Dep't of Revenue, 148 Wn.2d 637, 646 (2003). The issue is inapposite, however, because the regulations do not, in fact, contradict the statutory mandate. Although the administrative agency has chosen to focus its regulations on the conduct of insurers,[1] at least one regulation expressly

---

[1] In Rice v. State Farm Mut. Auto. Ins. Co., 2005 WL 2487975 (W.D. Wash., Oct. 7, 2005), the court found that an insurance company's employee was not an "insurer" as that term is used and defined in the regulations. The court then conflated plaintiff's claim of bad faith under RCW 48.01.030 and his claim that State Farm had violated the insurance regulations by imposing the regulatory definition of "insurer" on both the statute and the regulations. The issue presented in Rice, namely whether the

governs the conduct of an insurer's agent (WAC 284-30-350(2)). In addition, the regulations are not exclusive: "acts performed, whether or not specified herein, may also be deemed to be violations of specific provisions of the insurance code or other regulations." WAC 284-30-310. Thus, the regulations do not preclude a finding that an adjuster must act in good faith pursuant to the clear mandate of RCW 48.01.030.

Because AIG Domestic Claims had a statutory duty to act in good faith toward Lease Crutcher, the Court need not determine whether the parties had a fiduciary relationship or whether a common law duty of good faith also existed in these circumstances.

## C. Insurance Fair Conduct Act, RCW 48.30.015

The Insurance Fair Conduct Act ("IFCA") authorizes "first party claimant[s] to a policy of insurance who [are] unreasonably denied a claim for coverage or payment of benefits by an insurer [to] bring an action in superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs." RCW 48.30.015(1). AIG Domestic Claims argues that the IFCA applies only to the activities of an insurer and does not create a cause of action against an insurer's agent, adjuster, or employee.

The IFCA creates a private cause of action in favor of first-party claimants who have been unreasonably denied insurance coverage. The authorizing language does not, however, specify the proper defendant: whether an adjuster handling a claim can be sued for its participation in an unreasonable denial is not clear from RCW 48.30.015(1). The Court therefore looks to "the statute as a whole, giving effect to all that the legislature has said, and . . . using related statutes to help identify the legislative intent embodied in the provision in

---

statute gives rise to a bad faith claim against individuals directly employed by the insurer, need not be determined by this Court. The duty of good faith created by RCW 48.01.030 applies to an insurer's "representatives," a term that clearly encompasses separate corporate entities hired by the insurer to carry out fundamental insurance functions in its place.

question." <u>In re Parentage of J.M.K.</u>, 155 Wn.2d 374, 387 (2005). Consideration of the other sections of the IFCA is inconclusive. Pursuant to RCW 48.30.015(8), a first-party claimant is required to provide pre-filing notice "to the insurer and office of the insurance commissioner." An agent or representative of the insurer does not get notice under the Act from which one could infer that agents are not intended defendants. Pursuant to RCW 48.30.015(2), an award of treble damages is appropriate only if the court finds that "an insurer" has acted unreasonably in denying a claim. Both of these provisions suggest that the legislature intended to authorize claims against an insurer, not its agents. On the other hand, RCW 48.30.015(3), which requires the court to award fees and costs to a prevailing insured, is triggered by "a finding of unreasonable denial of a claim for coverage . . ." or an unfair claims settlement practice. Unlike the treble damages provision, an award of fees and costs is not contingent on a finding against "an insurer." In addition, at least one of the regulations on which an IFCA claim can be based expressly governs the conduct of an insurer's agents. WAC 284-30-350(2).[2]

Where the legislature's intent and purpose cannot be ascertained from the plain language of the statute, the Court "may look beyond the language of the act to its legislative history." <u>Bostain</u>, 159 Wn.2d at 726-27. The legislative history regarding IFCA is limited, but the final bill report states: "First party claimants to an insurance policy may sue insurers for unreasonable denials of coverage or payments of benefits." <u>See</u> Final Bill Report (http://apps.leg.wa.gov/billinfo/summary.aspx?bill=5726&year=2007). After considering all materials relevant to an interpretation of the IFCA, the Court concludes that the legislature intended to create a private cause of action for damages and attorney's fees against only the insurer, not its employees or agents.

---

[2] Although the legislature has imposed a general duty of good faith on representatives of the insurer, the IFCA is a separate – and relatively new – legislative enactment, and the parties have not identified any implementing regulations. Whether an adjuster is a proper defendant under the IFCA cannot be determined by considering the related statutes and regulations.

**D. Breach of Contract**

    An action for damages for a breach of contract must be based on a valid contract between the parties.  See Lehrer v. Dep't of Soc. & Health Servs., 101 Wn. App. 509, 516 (2000).  It is undisputed that Lease Crutcher had no contractual relationship with AIG Domestic Claims.  Nevertheless, plaintiff argues that because the defendants acted in concert to breach National Union's contractual obligations, there is a "juridical link" between defendants that allows Lease Crutcher to assert a breach of contract claim directly against AIG Domestic Claims.

    A juridical link may exist "in cases in which as a matter of law each [defendant] must act in the same manner, so that the plaintiff class claims are identical for all defendant class members . . . .  If the conduct being challenged by the plaintiff class depends on facts peculiar to each defendant's activities, however, then there is no juridical link . . . ." Doe v. Spokane-Inland Empire Blood Bank, 55 Wn. App. 106, 115 (1989) (quoting 7B C.Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1785.1, at 148-50 (1986)).  The cases cited in Doe involve the certification of a defendant class – the issue is whether the named plaintiff has standing to pursue a claim against defendants who did not actually harm plaintiff[3] but who were legally bound to act in the same injurious manner toward other members of the plaintiff class.  Lease Crutcher has not identified any contractual or statutory authority compelling defendants' actions in this case.  Nor does plaintiff seek to represent a class of individuals, some of whom may have a breach of contract claim against AIG Domestic Claims.  Under the facts alleged, no one has standing to bring a breach of contract claim against AIG Domestic Claims because there is no contract.  Lease Crutcher's claim seems to be based on the argument, not asserted in the Amended Complaint, that defendants acted in concert and/or that their separate corporate identities should

---

[3] In Wash. Educ. Ass'n v. Shelton Sch. Dist. No. 309, 93 Wn.2d 783, 790-91 (1980), the court found that each of the defendants had contributed to the injury of which plaintiff complained.

ORDER GRANTING IN PART AIG DOMESTIC
CLAIMS, INC.'S MOTION TO DISMISS          -7-

be ignored because they share a common parent. Neither argument has merit. Plaintiff has alleged agency, not conspiracy, and has not attempted to establish facts which would justify piercing the corporate veil. Neither concerted action nor a common commercial interest can substitute for a key element of a breach of contract claim, namely, the existence of a contract. See LaMar v. H&B Novelty & Loan Co., 489 F.2d 461, 470 (9th Cir. 1973) (disagreeing with Eastern District of Pennsylvania case in which a common commercial practice was held to be enough to serve as the juridical link). Plaintiff's breach of contract claim against AIG Domestic Claims fails as a matter of law.

**E. Consumer Protection Act, RCW 19.86 *et seq*.**

The Washington Consumer Protection Act ("CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. A private cause of action exists under the CPA if (1) the conduct is unfair or deceptive, (2) occurs in trade or commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or property. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780 (1986). AIG Domestic Claims argues that, in the absence of a contractual relationship between the parties, plaintiff's CPA claim must be dismissed.

A contractual relationship is not an element of a CPA claim. The Washington Supreme Court has confirmed that "any person who is injured" may sue under the statute, regardless of whether there is privity of contract. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 312-13 (1993). See also Stephens v. Omni Ins. Co., 138 Wn. App. 151, 175-76 (2007). A statement to the contrary in Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co., 122 Wn. App. 736, 758 (2004), is unsupported by any citation or analysis. Where there is a conflict in the case law, this Court will follow the pronouncements of the

Washington Supreme Court.[4]

## F. Conversion

The tort of conversion is "the act of wilfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it." Judkins v. Sadler-MacNeil, 61 Wn.2d 1, 3 (1962). Although the tort generally involves the loss of property, money may be the subject of a conversion claim in certain circumstances. Plaintiff alleges that National Union and AIG Domestic Claims "intentionally and wrongfully appropriated, used and expended funds to which Lewis had a priority right and claim . . . ." Amended Complaint at ¶ 57.

AIG Domestic Claims argues that this claim is defective because defendant acted solely as National Union's agent in this matter. Although there appear to be significant flaws in plaintiff's conversion claim against AIG Domestic Claims, defendant's role as an agent is not dispositive. As discussed above, employees and agents are regularly held liable for their individual participation in wrongful conduct under Washington law, even if that conduct were performed for the benefit of its principal.

## G. Declaratory Judgment

Plaintiff seeks a declaration that (1) its right to recover funds from third-parties is superior to any right National Union may have to the funds, and (2) National Union is obligated to reimburse plaintiff for funds already obtained. Amended Complaint at ¶¶ 61-62. Plaintiff argues that defendant is an appropriate target of a claim for declaratory relief because AIG Domestic Claims will carry out any further processing of plaintiff's insurance claim. The relief sought is directed solely at National Union, however, and plaintiff cannot amend its complaint

---

[4] Contrary to defendant's argument in reply, plaintiff's CPA claim is broadly alleged and may, in fact, be based on a violation of RCW 48.01.030. There is no reason to conclude that the claim as stated in the Amended Complaint is "based solely on alleged violations of the WAC insurance regulations." Reply at 9.

through argument.

## CONCLUSION

For all of the foregoing reasons, defendant's motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's Insurance Fair Conduct Act, breach of contract, and declaratory judgment claims against AIG Domestic Claims are hereby DISMISSED. Plaintiff's bad faith, Consumer Protection Act, and conversion actions may proceed. The thorny issues discussed at oral argument regarding the possibility of multiple statutory damage awards for the same conduct have not been joined and are hereby reserved for later consideration.


Dated this 20th day of October, 2009.


*MW S Lasnik*
Robert S. Lasnik
United States District Judge